IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

DONATO NAPPI,

                    Petitioner,

          vs.

BRUCE YELLACH,[1] Superintendent, Bare
Hill Correctional Facility,

                    Respondent.

No. 9:12-cv-01193-JKS

MEMORANDUM DECISION

Donato Nappi, a New York state prisoner represented by counsel, filed a Petition for a

Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Nappi is currently in the

custody of the New York State Department of Corrections and Community Supervision and is

incarcerated at Bare Hill Correctional Facility. Respondent has answered, and Nappi has

replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On July 1, 2009, a grand jury charged Nappi with third-degree criminal possession of a

weapon by indictment alleging that he possessed a firearm on January 5, 2009. An information

separately alleged prior convictions in 1982 for second-degree murder and second-degree

conspiracy. Nappi was on parole for those convictions when his parole officer found the firearm

at his home.

The trial court held a suppression hearing on November 6, 2009. At the suppression

hearing, Nappi's parole officer testified on cross-examination that he first learned that a gun may

---

[1]         The name of the respondent, Bruce Yelich, is misspelled in the caption.

be at the residence on the afternoon of January 5 when he received a call from a confidential informant. Defense counsel, who had not known about the informant, then requested a *Darden*[2] hearing. At the *Darden* hearing, the court granted the prosecution's motion for the informant to remain confidential at that time.

The court also held a hearing on *Sandoval*[3] issues. The prosecution moved to use a 1972 federal conviction for interstate transportation of stolen securities, a 1979 conviction for criminal possession of stolen property in the second degree, and a 1981 fifth-degree conspiracy conviction. The defense argued that the convictions were too remote and would be unduly prejudicial. The court ultimately ruled that the prosecution could cross-examine Nappi as to whether he was convicted of crimes other than those for which he was on parole and, if the answer was yes, the inquiry would stop. With respect to the convictions alleged by information, the court prohibited the use of the words "murder" or "conspiracy" at trial.

Nappi's wife testified at trial that, in September 2008, Nappi told her that he was looking to get back a gun that he had owned prior to his imprisonment. Defense counsel objected on marital privilege grounds and the court ruled the conversation to be a daily and ordinary exchange between spouses protected by the privilege. She testified to other conversations, including one in December 2008 where Nappi told her he had found out who had his gun. When

---

[2]    *People v. Darden*, 313 N.E.2d 49 (N.Y. 1974), disapproved on other grounds by *People v. Belton*, 407 N.E.2d 420 (N.Y. 1980). A *Darden* hearing is a shorthand reference to a hearing under New York law to determine the validity of a warrantless search.

[3]    *People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974). *Sandoval* is a short-hand reference to the procedure under New York law under which the trial court determines, in advance, whether evidence of prior convictions is admissible in the event that the defendant testifies.

asked if Nappi had asked her do something to obtain a gun, Mrs. Nappi stated that she was asked to locate a phone number and contact the individual because he could not do so.

Over objection, Mrs. Nappi testified that, on December 11, 2008, her husband called her into a bedroom at her son's home and showed her a gun that was sitting on a towel. She also observed a clip and ammunition in a box. Mrs. Nappi testified that they returned to their home separately the next day with her transporting the gun. She stated that she did not want the gun, but that Nappi told her to hold it as his parole could be violated. Mrs. Nappi testified that she was afraid to have the gun in the house. Nappi told her that he would keep the ammunition and she could take the gun, which she put in her room initially. After a few weeks, Mrs. Nappi moved the gun when Nappi told her he wanted it soon. She did not provide him with the gun as she was afraid to have the gun and ammunition together.

Mrs. Nappi further testified that, on January 4, 2009, Nappi's parole officer, Parole Officer Stewart, arrived at the home for a parole visit. On January 5, 2009, state police arrived at the Nappi residence and searched the home, looking for Mrs. Nappi's son, for whom they had a search warrant. Later that day, Stewart arrived at the home, searched the house, and found the gun.

The court then excused the jury and informed the parties that he was lifting the confidentiality of the informant and revealed that Mrs. Nappi was the confidential informant. The prosecution then continued examination of Mrs. Nappi, who testified that, on the afternoon of January 5, 2009, she spoke to Stewart and told him where the gun could be found because she was afraid of somebody getting hurt.

On cross-examination, Mrs. Nappi admitted she had known Nappi's friend, Del Dyman, for forty years. She denied having a romantic relationship with him but stated that she had placed her house as collateral for his bail. Mrs. Nappi also denied having any misdemeanor or felony convictions. She testified that, when she visited Nappi at jail, he told her to say that the gun belonged to her father who had recently passed away.

Parole Officer Stewart also testified at trial. He testified that he had advised Mrs. Nappi that she should inform him if Nappi ever acquired a weapon. On January 4, 2009, he made an unannounced evening visit and found Nappi, Mrs. Nappi, and her son at the home. Stewart was aware that Mrs. Nappi's son might be wanted on a warrant so, the following day, he checked and learned that a warrant was active. Later that day, he received a call from Mrs. Nappi that there was a weapon at Nappi's home. He notified law enforcement to make a plan to secure the weapon and advised Mrs. Nappi to move the weapon to under the bed for safety reasons. When Nappi arrived home, Stewart met him and looked in the car for Mrs. Nappi's son. Stewart then advised the Nappis that he was going to look for Mrs. Nappi's son in the house. At some point during his search, he went into the middle bedroom and found under the bed a towel with a weapon inside. Stewart secured the area where the gun was found and had an officer restrain Nappi while a warrant was obtained. On re-direct, Stewart testified that he had concerns about possible domestic violence.

The prosecution also presented the testimony of a parole supervisor who was present during the search and a police investigator who testified that the gun was not registered in either Oneida or Herkimer Counties. The prosecution further introduced testimony that the gun had a

print that was consistent with Nappi's DNA and that Nappi did not have a pistol permit in Herkimer County.

At the conclusion of the prosecution's case, the defense moved to dismiss due to lack of sufficient evidence of possession on January 5, 2009. The prosecution alleged that constructive possession was shown. The court ruled that it would charge as to both accomplice testimony as requested by the defense and construction possession as requested by the prosecution. The court also determined that sufficient evidence was presented to have the case go to the jury. After deliberations, however, the jury was unable to reach a unanimous verdict.

Nappi then proceeded to a second jury trial. Nappi wanted to cross-examine Mrs. Nappi and present witnesses who could testify that: 1) Mrs. Nappi had a romantic relationship with Dyman at some time in the last 20 or 30 years; 2) Mrs. Nappi's house was subject to foreclosure if Dyman absconded from bail; 3) that Mrs. Nappi asked an attorney for advice about bailing out Dyman; and 4) that Mrs. Nappi had engaged in acts of prostitution. Based on Mrs. Nappi's testimony from the first trial that she had no criminal record and no romantic relationship with Dyman, the court determined that the proposed testimony involved collateral matters and precluded Dyman from either cross-examining Mrs. Nappi on those issues or introducing the proffered witnesses. The trial court also changed its *Sandoval* ruling, stating that the prosecution would be permitted to impeach Nappi with all prior convictions and, if Nappi testified, could mention the number of years that Nappi had been in prison. The prosecution also presented the testimony of Terry Chrisman, an inmate who had been housed with Nappi for four months, who testified that Nappi had told him that he and his wife argued on the phone

because Nappi wanted her to do something for him regarding his father.  The evidence presented was otherwise largely consistent with the evidence presented at the first trial.

At the close of the prosecution's case, Nappi made a motion that the jury be instructed to disregard Mrs. Nappi's testimony on the ground that the prosecution did not provide her criminal history.  Nappi also requested a mistrial or dismissal for not being allowed to pursue Mrs. Nappi's relationship with Dyman.  Defense counsel also argued that the prosecution presented perjured testimony from Mrs. Nappi and that the second trial violated the protections against double jeopardy based on an improper decision by the court in the first trial.  Defense counsel further asked for dismissal based on insufficient evidence.  The motions were denied.  The prosecution produced a partial rap sheet for Chrisman, and the defense was given the option to recall him as a witness because there were more convictions than he had stated during his testimony.  Defense counsel waived the opportunity after the rap sheet was agreed to be placed into evidence.  The defense then rested.

During deliberations, the jury questioned whether only January 5, 2009, could be considered for possession.  The court read the instruction again which was worded "on or about" January 5th and answered "no" to the jury's question.  After deliberations, the jury found Nappi guilty of third-degree criminal possession of a weapon.  On March 15, 2010, Nappi was sentenced to an imprisonment term of 3½ to 7 years.

Proceeding with the same counsel who had represented him at trial, Nappi appealed his conviction to the Appellate Division, arguing that: 1) the trial court erred in denying his motion for dismissal after the first trial thus violating the constitutional protection against double jeopardy; 2) the trial court erred in admitting Mrs. Nappi's conversations with Nappi in violation

of the marital privilege; 3) the court erred in instructing the jury that they should disregard the erroneous date in the indictment; 4) the court erred in not suppressing the evidence obtained by a warrantless search of Nappi's home; 5) the court erred in limiting the cross-examination of Mrs. Nappi; 6) the prosecutor committed misconduct by eliciting testimony of uncharged crimes; 7) the prosecutor committed misconduct by eliciting perjured testimony, failing to reveal the criminal history of witnesses, and arguing to keep a juror who expressed bias; 8) Nappi's right to counsel was violated when the trial court admitted statements that Nappi made to his wife during her visits to jail; 9) the evidence was legally insufficient and the verdict was against the weight of the evidence; 10) the trial court erred when it changed its *Sandoval* ruling from the first trial; 11) the trial court erred in refusing to dismiss the indictment; and 12) trial counsel was ineffective.  The Appellate Division affirmed Nappi's conviction in a reasoned opinion entered on April 29, 2011.  Nappi's counsel sought leave to appeal the decision to the Court of Appeals, which was summarily denied on August 5, 2011.

Again proceeding through the same counsel, Nappi filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10.  He argued that: 1) the court lacked jurisdiction based on errors in the indictment; and 2) his right to a fair trial was violated where the prosecutor objected to counsel referring to Nappi as innocent.  The county court denied the motion in a reasoned opinion on December 13, 2011.  Nappi did not seek leave to appeal the denial.

Proceeding with the same counsel who represented him in his state court proceedings, Nappi timely filed a Petition for a Writ of Habeas Corpus to this Court on June 26, 2012.

## II. GROUNDS RAISED

In his counseled Petition, Nappi raises the following twelve claims: 1) his conviction after a mistrial violated the prohibition against Double Jeopardy; 2) the trial court erroneously admitted the testimony of his wife in violation of the marital/spousal privilege; 3) his conviction was based on a defective indictment; 4) the evidence against him was obtained through an illegal search and seizure; 5) he was denied his right to confrontation when the trial court precluded him in the second trial from questioning his wife about a potential motive; 6) the prosecution improperly elicited testimony of uncharged crimes; 7) the prosecutor committed misconduct by eliciting perjured testimony, failing to disclose criminal histories of two witnesses, objecting to "legitimate voir dire and argument," and impugning the integrity of the defense; 8) he was denied his right to counsel when his wife, who had served as a confidential informant in the case against him, visited him in jail after his arrest; 9) the verdict was against the weight of the evidence and not supported by legally sufficient evidence; 10) the trial court erred in its *Sandoval* ruling which led Nappi to refrain from testifying; 11) there was insufficient evidence presented in the grand jury proceedings to support his indictment; and 12) his trial counsel was ineffective for failing to bring to the jury's attention discrepancies in his wife's testimony.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000).  Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo

standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46.

## IV. DISCUSSION

A.      Exhaustion

Respondent correctly contends that two of Nappi's claims are unexhausted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). As Respondent notes, Nappi raised his weight of the evidence

claim (claim 9) and his defective grand jury proceedings claim (claim 11) solely on the basis of state law.

Nappi's unexhausted weight of the evidence claims are procedurally barred. Because Nappi's claims are based on the record, they could have been raised in his direct appeal but were not; consequently, Nappi cannot bring a motion to vacate as to these claims. CPL § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . . "). Moreover, Nappi cannot now raise these claims on direct appeal because he has already filed the direct appeal and leave application to which he is entitled. *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991).

"[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008); *see also Grey*, 933 F.2d at 121. A habeas petitioner may only avoid dismissal of his procedurally defaulted claims if he can demonstrate "cause for the default and prejudice from the asserted error," *House v. Bell*, 547 U.S. 518, 536 (2006), or a "fundamental miscarriage of justice," *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). A miscarriage of justice is satisfied by a showing of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). Nappi does not claim that cause exists for his procedural default, nor, as discussed more fully below, does he

show actual innocence.  Because Nappi may not now return to state court to exhaust these claims, the claims may be deemed exhausted but procedurally defaulted from habeas review. *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

Despite Nappi's failure to exhaust these claims, this Court nonetheless may deny those claims on the merits and with prejudice.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  This is particularly true where the grounds raised are meritless.  *See Rhines*, 544 U.S. at 277.  Accordingly, this Court declines to dismiss the unexhausted claims solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

B.      Merits

Claim 1: Double Jeopardy Violation

Nappi first argues that he was subjected to double jeopardy "when the trial court failed to grant his motion for a trial court order of dismissal at the first trial and allowed him to be tried a second time when there was legally insufficient evidence at the first trial to convict him."  The Appellate Division summarily rejected this claim on direct appeal.

In support of this claim, Nappi states:

> There was no evidence at the first trial that [Nappi] possessed a gun in the Town of Webb, Herkimer County, on or about January 5, 2009.  The evidence was that Mr. Nappi's wife (who was secretly working with Parole) brought the gun from Oneida County to Herkimer County per Mrs. Nappi—at her husband's request) some weeks earlier.  Mrs. Nappi hid the gun in or around her Herkimer County home starting in mid-December and would not tell [Nappi] where she hid it.  Mrs. Nappi testified at the first trial that she would not give Donato access to the gun and that Mr. Nappi did not know where the gun was.  Mrs. Nappi kept the gun hidden at different locations around her home until January 5, 2009, when she called Parole to come get it.  Parole did, and they

arrested Mr. Nappi for possession of the gun. (Mr. Nappi was gone from the home for almost all of January 5, 2009, and Parole purposefully waited for him to come home to search the house and seize the gun.) There was no evidence that Mr. Nappi touched the gun or otherwise had access to it from the time it arrived in Herkimer County (in mid-to-late December 2008) until it was seized by Parole on January 5, 2009.

[Nappi] made a motion for a trial court order of dismissal on the above grounds prior to the case being submitted to the jury. The motion was denied. The jury hung, and the prosecution subsequently retried Mr. Nappi.

"The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense," but "does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Oregon v. Kennedy*, 456 U.S. 667, 671-72 (1982). As the Second Circuit Court of Appeals explained in *United States v. Ustica*:

[T]he Supreme Court has determined that where there has been a mistrial because of a hung jury, the Double Jeopardy Clause does not bar retrial—regardless of any evidentiary insufficiency at the first trial. *Richardson v. United States*, 468 U.S. 317, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984). In *Richardson*, the Court explained that unlike an appellate reversal on insufficiency grounds, a mistrial because of a hung jury is not an "event" that terminates the original jeopardy to which the defendant was subject. Therefore, following such a mistrial, even if an appellate court could determine that the prosecution's evidence was insufficient to support a conviction, a defendant nonetheless has no valid double jeopardy claim:

Since jeopardy attached here when the jury was sworn, petitioner's argument necessarily assumes that the judicial declaration of a mistrial was an event which terminated jeopardy in his case and which allowed him to assert a valid claim of double jeopardy . . . . [W]e hold . . . that the failure of the jury to reach a verdict is not an event which terminates jeopardy.
. . .
The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree. *Regardless of the sufficiency of the evidence at petitioner's first trial*, he has no valid double jeopardy claim to prevent his retrial.

*Id*. at 325-26, 104 S. Ct. at 3086-87 (citations omitted) (emphasis added).

847 F.2d 42, 48 (2d Cir. 1998); *accord Robertson v. Artus*, No. 9:04-CV-946, 2008 WL 553200 at *4-5 (N.D.N.Y. Feb. 27, 2008).

Because the prosecution was not barred on double jeopardy grounds from retrying Nappi even if the evidence presented at the first trial was insufficient to sustain a conviction, this Court is not required to engage in a sufficiency of the evidence analysis, and Nappi cannot prevail on his double jeopardy claim. *See United States v. Bruno*, 661 F.3d 733, 741 (2d Cir. 2011).

<u>Claim 2: Violation of Marital Privilege</u>

Nappi next contends that the trial court violated his right to the marital/spousal privilege when it "allowed Mrs. Nappi to testify to confidences that her husband reportedly shared with her alone, in the context of their marriage." The Appellate Division rejected this claim on direct appeal, finding that "[Nappi's] words and actions at issue were in furtherance of a criminal enterprise" and thus admissible as an exception to the marital privilege. The court further concluded that any error in the admission of testimony was harmless in light of the overwhelming evidence against Nappi.

In his Petition, Nappi alleges:

> The crux of the prosecution's case at both trials was the testimony of Janice Nappi, the wife of Donato Nappi. Without her, the prosecution had no case. Most of Janice's testimony, however, particularly at the first trial (approximately twenty pages of testimony) consisted of statements rendered in violation of NY statute and the state and federal marital privileges, which have been found to be an extension of the Fifth Amendment. Donato Nappi never authorized his wife to disclose any confidences between them. The confidences came to which Janice testified included how the gun allegedly came to be in Herkimer County and statements she attributed to her husband and about why he needed it or how he wished to gain access to it.

The Second Circuit has explained:

> The common law rules of testimonial privilege recognize two distinct marital privileges. The adverse spousal testimony privilege permits an individual to refuse to testify in a criminal proceeding against her or his spouse. This privilege rests on the notion that a husband and wife should be able to trust each other completely, and that marriage is a sanctuary. The privilege is described as being "broadly aimed at protecting

14

marital harmony." *In re Grand Jury Subpoena United States*, 755 F.2d 1022, 1027 (2d Cir. 1985), *vacated on other grounds sub nom United States v. Koecher*, 475 U.S. 133, 106 S. Ct. 1253, 89 L. Ed. 2d 103 (1986). The second marital privilege—the confidential marital communications privilege—is narrower than the adverse spousal testimony privilege and seeks only "to protect the intimacy of private marital communications," *id.*, but it can be invoked by either spouse to prevent the revelation of such communications.

*United States v. Premises Known as 281 Syosset Woodbury Road*, 71 F.3d 1067, 1070 (2d Cir. 1995).

Because Mrs. Nappi voluntarily testified in this case, only the confidential marital communications privilege is at issue here. The Second Circuit recognized the joint crime exception to the marital communications privilege in *United States v. Estes*, 793 F.2d 465 (2d Cir. 1986). In *Estes*, the defendant's wife willingly testified before the grand jury and at trial that the defendant had returned home one day carrying a bag full of money. *Id.* at 466. She testified that the defendant told her that he had stolen the money and that she helped him count, hide, and launder the money. *Id.* The district court held that none of the wife's testimony should be excluded because "confidential marital communications concerning ongoing criminal activity are not protected by the privilege." *Id.* (quoting *United States v. Estes*, 609 F. Supp. 564, 568 (D. Vt. 1985)). The Second Circuit held that the exception did not apply to the testimony regarding the husband's initial disclosure of the theft and remanded for a new trial, stating:

> At that time, the theft of the money had been completed and [the wife's] involvement could be only as an accessory after the fact. [The wife] could not become such an accessory until she knew that the theft had taken place. The communication to her of that knowledge was a necessary precursor to her involvement and therefore could not have been made as part of an ongoing joint criminal activity. Under the normal evidentiary rule applicable to confidential marital communications, this portion of [the wife's] testimony should not have been admitted.

*Id*. (citations omitted). The court also stated that "the greater public good will result from permitting the spouse of an accused to testify willingly concerning their joint criminal activities than would come from permitting the accused to erect a roadblock against the search for truth." *Id*. at 468.

In this case, it was unlawful for Nappi to possess a gun and therefore the offense alleged was a continuing crime, unlike the crime in *Estes* where the wife's involvement could only be as an accessory after the fact. *See United States v. Sims*, 755 F.2d 1239, 1243 (6th Cir. 1985) ("Only where spouses engage in conversations regarding joint ongoing or future patently illegal activity does the public's interest in discovery of the truth about criminal activity outweigh the public's interest in protecting the privacy of marriage."). While one might question whether Mrs. Nappi's involvement may be properly characterized as in furtherance of the crime given that she testified that she was afraid of the gun and attempted to hide the gun from Nappi, she also testified at trial that she did not inform Nappi's parole officer about the gun for a few weeks and that she kept it hidden at her home during at least two unsuccessful searches of her home. Given these actions, the Court cannot say that the Appellate Division's conclusion that her statements were admissible under the partnership in crime exception to the confidential communication privilege, especially given the absence of Supreme Court authority to the contrary. Accordingly, Nappi is not entitled to relief on this claim.

<u>Claims 3 and 11: Defective Indictment and Legal Insufficiency in Grand Jury Proceedings</u>

Nappi also alleges in claim 3 that he was "denied due process, a fair trial, his right to be tried in the venue where the crime allegedly occurred, and his rights to have notice of the

allegation against him and to be tried on a grand jury indictment . . . when the trial court told the jury they could disregard material aspects of the indictment." The Appellate Division rejected this claim on direct appeal of his conviction, concluding that, "[a]lthough evidence was presented at trial with respect to [Nappi's] conduct during a period of time prior to [the date the indictment alleged that the offense occurred], reversal is not required because the time of the offense is not a material element of the offense and the variance is relatively minor."

Nappi argues in his Petition:

> Mr. Nappi was initially charged, and subsequently indicted, for having possessed a gun in the Town of Webb, Herkimer County on or about January 5, 2009. After all of the evidence had been submitted at the second trial, however, and after closing arguments had concluded, the Trial Court allowed the jury to convict Donato Nappi on the basis of evidence that he may have possessed a gun in a different county (Oneida County) several weeks earlier. Over defense objection, the Trial Court instructed the jury (in response to their question about the indictment date) that they could disregard the indictment date and consider, instead, evidence of earlier weeks, including what had happened on December 11, 2008 (a date in which Donato Nappi and his wife were exclusively in Oneida County).

Nappi similarly argues in claim 11 that his "right to due process and to be indicted by a grand jury for a felony was violated, when the trial court allowed an indictment to stand that was based on legally insufficient evidence, and when the prosecution and state witnesses grossly misled the grand jury as to the facts, depriving them of their ability to act independently as a grand jury." The Appellate Division held that Nappi could not challenge the legal sufficiency of the evidence before the grand jury in his "appeal from an ensuing judgment of conviction based upon legally sufficient trial evidence" and further rejected his contention that the integrity of the grand jury was impaired because the prosecution had "no duty to present all evidence in their possession that is favorable to [Nappi]."

In support of this claim, Nappi states in his Petition:

> Only 4 witnesses (all law enforcement officers) testified before the grand jury. None of them had personal knowledge of the critical facts in the case, but they told the grand jury that a gun was "found" concealed, wrapped in a towel, under a bed in a home where Mr. Nappi was residing. None of the law enforcement witnesses had personal knowledge as to how the gun got there. (The prosecution elected not to call Mrs. Nappi as a witness—apparently because it did not want to reveal her status as "confidential informant.") The prosecutor and a number of the testifying officers knew, though, the reality of the situation, which they hid from the grand jury, namely: the gun was wrapped in that towel and placed under that bed by Janice Nappi at Parole's direction. The grand jury was never informed that Mrs. Nappi owned the house, that she was working with Parole, and, most important, that she refused to give Mr. Nappi access to the gun or tell him where it was.

Nappi's subsequent conviction forecloses any potential relief here. With respect to Nappi's claim that insufficient evidence was presented before the grand jury, for federal constitutional purposes, a jury conviction transforms any defect in the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt. *See, e.g.*, *United States v. Mechanik*, 475 U.S. 66, 67 (1986) ("[T]he petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."). In *Lopez v. Riley*, the Second Circuit relied on *Mechanik* in holding that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *see also Davis v. Mantello*, 42 F. App'x 488, 490-91 (2d Cir. 2002) ("[C]laims of deficiencies in state grand jury proceedings

are not cognizable in a habeas corpus proceeding in federal court." (citing cases)).  Nappi's

grand jury proceeding claim (claim 11) therefore must fail.

Consequently, Nappi's defective indictment claim (claim 3) is not cognizable on federal

habeas review either because the alleged error in date fails to raise an issue on constitutional

dimension.  *See, e.g.*, *United States v. Lombardozzi*, 491 F.3d 61, 80 (2d Cir. 2007) ("It is well

settled that a guilty verdict at trial remedies any possible defects in the grand jury indictment."

(internal quotation marks and citation omitted)); *Nelson v. Heath*, No. 11-CV-2183, 2011 WL

4711763, at *7-8 (E.D.N.Y. Oct. 3, 2011) ("[T]he alleged deficiency"—only naming the

defendant in the caption of the indictment—"was not of constitutional dimensions and cannot

serve as the basis for federal habeas relief."); *Robinson v. LaClair*, 90-CV-3501, 2011 WL

115490, at *8 (E.D.N.Y. Jan. 13, 2011) ("Petitioner is not entitled to federal habeas review of

this claim because [his defective indictment] claim does not raise a question of federal law

proper for consideration by this court.").  Accordingly, Nappi is not entitled to relief on either of

his grand jury or defective indictment claims.

Claim 4: Illegal Seizure

Nappi likewise argues that "[t]he evidence on which the entire prosecution was based

(namely, the unloaded gun, and some ammunition that was found subsequently) was seized in

violation of Mr. Nappi's Fourth Amendment rights, and the trial court erred in denying defense

counsel's motion to suppress that evidence."  He contends that "Parole used [his] general parole

conditions as a pretext or ruse to avoid the Fourth Amendment's search warrant requirement."

The Appellate Division denied this claim on direct appeal, concluding:

The court properly refused to suppress the gun and ammunition that was seized from [Nappi's] residence by his parole officer. A defendant's parole officer may conduct a warrantless search where the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty. We conclude that the parole officer's search of the residence was rational and reasonably related to the performance of his duty of preventing parole violations for the protection of the public from the commission of further crimes. The parole officer had a rational and reasonable basis to believe a gun would be located in the residence based on the information given to him by [Nappi's] wife, and the fact that police officers assisted after the gun was found by obtaining a warrant to search the remainder of the premises did not render the initial search by the parole officer a police operation.

As Respondent notes, Nappi's arguments are precluded by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. *Id.* at 482. The Second Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See McPhail v. Warden*, *Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983). In order to receive habeas review of his Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient to give this Court authority to review Fourth Amendment claims. *Id.* at 72.

That New York has in place such procedures is well-settled, *see id.* at 70 & n.1, and

Nappi has not asserted the existence of an unconscionable breakdown of that process in this

case.  Nappi is therefore not entitled to relief on this ground either.

Claim 5: Denial of Right to Confrontation

Nappi next asserts that his rights to confrontation, due process, a fair trial, and to put on a

defense were violated "when the trial court prohibited him from challenging the bias and

veracity of the state's main witness and when the trial court disallowed [him] from calling

almost all of his witnesses."  The Appellate Division disagreed, holding that the proposed cross-

examination and calling of witnesses were properly precluded because the proposed testimony

would have concerned "collateral matters."

Nappi alleges in his Petition:

> Complaining witness Mrs. Nappi (the state's star witness) portrayed herself at
> trial as a timid, law-abiding citizen who loved her husband but who became afraid of
> him.  At the first trial, [Nappi] put on evidence that his wife actually had a motive to lie
> about and get rid of him—most importantly, the fact that she had a paramour (a "career
> burglar") for whom she had used her home as security to post a $50,000 bail bond (soon
> after Mr. Nappi was arrested on this case).  After the jury hung, the trial court would not
> allow the defense to put on that same evidence at the second trial.  Mr. Nappi was also
> precluded, at the second trial, from asking Mrs. Nappi about acts of moral turpitude
> (such as her having acted as a prostitute).  Mr. Nappi was also prohibited from calling
> four of the five witnesses he intended to call, who had knowledge of Mrs. Nappi's
> relationship with her paramour, her having acted as a prostitute, etc.

It is well settled that, under the Sixth Amendment, an accused has the right to present

witnesses, testimony and other evidence in his defense.  *See Washington v. Texas*, 388 U.S. 14,

19 (1967).  However, "[t]he accused does not have an unfettered right to offer testimony that is

incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  *Taylor v.*

*Illinois*, 484 U.S. 400, 409-10 (1988).  States have considerable latitude under the Constitution

to establish rules excluding evidence from criminal trials. *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006). The Second Circuit has further mandated:

> "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985) (per curiam) (emphasis omitted). A trial judge retains "wide latitude" to restrict cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." [*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)]; *see also Watson v. Greene*, 640 F.3d 501, 510 (2d Cir. 2011) (the "decision to restrict cross-examination will be reversed only when the court has abused its broad discretion" (internal quotation marks omitted)). "To determine the propriety of cross-examination, as with other determinations of admissibility of evidence, courts balance prejudice versus probative value." *Watson*, 640 F.3d at 510.

*Corby v. Artus*, 699 F.3d 159, 166 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1287 (2013); *see also Grant v. Demskie*, No. 99-2744, 2000 WL 1715224, at *4 (2d Cir. Nov. 13, 2000) (holding on habeas review that state trial court did not abuse its discretion in precluding admission of allegedly false allegations regarding prior sexual incidents where defense presented "little evidence" that the allegations were indeed false).

"Limitations on cross-examinations raised in habeas petitions have been found to have not violated the Confrontation Clause . . . where cross-examination would have probed matters deemed collateral." *Soto v. Donelli*, No. 06-CV-5816, 2010 WL 4242602, at *5 (S.D.N.Y. Apr. 8, 2010) (citation omitted). "Collateral matters are those that bear solely on the witness' credibility." *Avincola v. Stinson*, 60 F. Supp. 2d 133, 156 (S.D.N.Y. 1999) (collecting cases). Further, there is no Confrontation Clause violation "if [the] defendant has ample opportunity to conduct effective cross examination." *Soto*, 2010 WL 4242602, at *6 (citations and internal quotation marks omitted).

In this case, the trial court properly excluded cross-examination and witness testimony suggesting that Mrs. Nappi had worked as a prostitute because such testimony was offered solely to attack Mrs. Nappi's credibility. The exclusion of evidence relating to her relationship with Dyman presents a closer issue. The Second Circuit has cautioned that "the preclusion of motive evidence may present a strong argument that a constitutional violation has occurred." *Grant*, 2000 WL 1715224, at *4 (citing *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) ("[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."); *Justice v. Hoke*, 90 F.3d 43, 50 (2d Cir. 1996) (granting writ of habeas corpus where "the testimony regarding Locke's motivation to fabricate the allegations against Justice could have raised a reasonable doubt regarding the truthfulness of Locke's allegations")). Here, however, the proffered motive was simply speculation. *See Grant*, 2000 WL 1715224 at *4 (no constitutional violation where "there is little evidence in the record indicating that significant motive evidence was in fact precluded by these restrictions"). While it may give this Court pause that Nappi was allowed to question Mrs. Nappi about her relationship with Dyman in the first trial which resulted in a hung jury, given that Mrs. Nappi denied the relationship, this Court cannot say that the Appellate Division's decision was unreasonable or contrary to federal law. This is particularly true given that "evidence of a witness' bias must be competent to be admissible, and the trial court has broad discretion to curtail exploration of collateral matters." *Justice*, 90 F.3d at 48.

The Supreme Court's decision in *Davis v. Alaska*, 415 U.S. 308 (1974), does not compel a different conclusion. In *Davis*, the petitioner had been convicted of grand larceny and burglary following a trial in which the trial judge prevented defense counsel from cross-examining a key

witness concerning his adjudication as a juvenile delinquent relating to a burglary and his probation status at the time of the events. *Davis*, 415 U.S. at 309-11. Defense counsel sought to introduce the witness's juvenile record on cross-examination not as a general impeachment of the witness's character but rather to show bias and prejudice against the defendant because the witness, who was then on probation, might have identified the defendant out of fear or concern that the police might believe he had committed the crime in issue, thereby jeopardizing his probation. *Davis*, 415 U.S. at 311. Following the affirmance of petitioner's convictions by the Alaska Supreme Court, the United States Supreme Court reversed and remanded, holding that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on the witness's testimony. *Id.* at 317. In particular, the court ruled that counsel should have been permitted to ask the witness not only "whether he was biased," but also "why [he] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." *Id*. at 318. The *Davis* Court emphasized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316-17.

The proffered evidence here, however, does not share the probative value of the evidence at issue in *Davis*. Nappi's contention that his wife's relationship with Dyman led her to frame Nappi to keep him in jail is pure speculation. Therefore the proper question in this case is whether it was "objectively unreasonable" for the Appellate Division to conclude that the trial court struck a proper balance between precluding irrelevant testimony on collateral matters and Nappi's Sixth Amendment right to examine the victim's motivation for her testimony. This Court cannot say that the decision was "objectively unreasonable" given the weakness of the

potential motive that Nappi proffers. Accordingly, § 2254(d) of the AEDPA precludes this court from granting habeas relief on this claim.

Claim 6: Improper Admission of Uncharged Crimes

Nappi additionally contends that he was denied due process and a fair trial "when the prosecutor purposefully and repeatedly elicited in front of the jury evidence of other, uncharged criminal activity by Mr. Nappi—evidence that the trial court had barred pretrial." The Appellate Division found that Nappi failed to preserve the claim for review on direct appeal because he never objected to the evidence on that ground.

In his Petition, Nappi states that, although the prosecutor did not move pursuant to *Molineux/Ventimiglia*[4] to admit or for an evidentiary hearing on any evidence of Nappi's prior criminal activity, he "repeatedly, purposefully and unsolicitedly" elicited testimony about "the fact that Mr. Nappi had been in custody for 26 years, that he had a long criminal history, that he beat his wife, that he threatened another inmate in jail while awaiting retrial in this matter, etc."

As an initial matter, "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris v. Reed*, 489 U.S. 255, 262 (1989). In finding these claims unpreserved, the Appellate Division relied upon New York's contemporaneous objection rule, CPL § 470.05(2), which has long been considered such an "adequate and independent ground." *See Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011).

---

[4]     *People v. Ventimiglia*, 420 N.E.2d 59 (N.Y. 1981); *People v. Molineux*, 61 N.E. 286 (N.Y. 1901). These terms are shorthand references to the New York procedure for determining in advance whether evidence of prior crimes is probative for the purpose of showing, *e.g.*, 1) motive, 2) intent, 3) absence of mistake or accident, 4) common scheme or plan, or 5) identity, and for determining whether that probative value outweighs the prejudicial effect.

New York's rule requires that an alleged error be "brought to the attention of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 647 N.E.2d 1243, 1246-47 (N.Y. 1995). As trial counsel never raised this claim before the trial court, the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule.

In any event, Nappi's claim is not cognizable on federal habeas review. *See, e.g., Mercedes v. McGuire*, No. 08-CV-299, 2010 WL 1936227, at *8 (E.D.N.Y. May 12, 2010) (Appellate Division's rejection of petitioner's claim that the use of uncharged crimes violated his due process rights was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent because "the Supreme Court has never held that a criminal defendant's due process rights are violated by the introduction of prior bad acts or uncharged crimes."); *Allaway v. McGinnis*, 301 F. Supp. 2d 297, 300 (S.D.N.Y. 2004) (the Supreme Court has yet to clearly establish "when the admission of evidence of prior crimes under state evidentiary laws can constitute a federal due process violation"). Accordingly, this Court must conclude that Nappi is not entitled to habeas relief on this claim.

Claim 7: Prosecutorial Misconduct

Nappi also argues that the prosecutor committed misconduct when he: 1) used testimony that he either knew or should have known was perjured; 2) refused to "look into" the criminal history of his witnesses and "attempted to shield them from proper cross-examination"; and 3) "objected to legitimate voir dire and argument about 'reasonable doubt' and the 'presumption of innocence.'" The Appellate Division rejected these contentions as either unpreserved or without merit.

A.      Perjured Testimony

Nappi states that his wife testified at an *ex parte* hearing that she informed Nappi's parole officer about the gun in December 2008, not in January 2009, as she testified in the first and second trials.  Nappi therefore contends the prosecutor should have known that Mrs. Nappi's trial testimony was fabricated.  Nappi also claims that Terry Chrisman committed perjury by stating that he had not been offered any benefit in exchange for his testimony.  The record indicates that Chrisman testified that he had not been made any promises in exchange for his testimony and that he was "just hoping" to receive a more lenient sentence in return.

A prosecutor has a duty of candor in court and an enduring obligation to pursue the truth. *See, e.g., United States v. Salameh*, 152 F.3d 88, 133 (2d Cir. 1998).  "[T]he knowing use of perjured testimony involves prosecutorial misconduct and, more importantly, involves 'a corruption of the truth-seeking function of the trial process.'"  *United States v. Bagley*, 473 U.S. 667, 680 (1985) (citing *United States v. Agurs*, 427 U.S. 97, 104 (1976)).  This includes instances in which the "prosecution knew, or should have known, of the perjury." *Agurs*, 427 U.S. at 103 (citing *Mooney v. Holohan*, 294 U.S. 103 (1935)).

Nappi has failed, however, to show that the prosecutor committed misconduct with respect to either Mrs. Nappi's or Chrisman's testimony.  Even assuming that Mrs. Nappi's testimony was internally inconsistent, Nappi has not shown that it was perjurious or that the prosecutors knew it was perjurious.  *See United States v. Gambino*, 59 F.3d 353, 365 (2d Cir. 1995) ("[E]ven a direct conflict in testimony does not in itself constitute perjury."); *Smithwick v. Walker*, 758 F. Supp. 178, 186 (S.D.N.Y. 1991) ("A prior inconsistent statement does not rise to the level of perjury.").  Nor has Nappi established that Chrisman's testimony that he did not

receive a deal in exchange for his testimony was actually false.  He argues that "there is no other reasonable explanation for Mr. Chrisman's testimony at the second trial."  Nappi's claim is simply an attack on the witness's credibility, but this Court must defer to the jury's credibility findings concerning the mother's testimony.  *See Bellezza v. Fischer*, Nos. 01-CV-1445, 03-MISC-0066, 2003 WL 21854749, at *15 (E.D.N.Y. Aug. 6, 2003) (holding that, on collateral review, a federal habeas court "must presume that the jury resolved any questions of credibility in favor of the prosecution") (internal quotation marks and citation omitted).  Nappi therefore fails to establish that the prosecutor elicited perjured testimony.

B.     Criminal History of Prosecution Witnesses

Nappi additionally contends that the prosecution refused to run a criminal history check on Nappi's wife and initially provided him an incomplete copy of Chrisman's criminal history.  Under New York law, CPL § 240.45(1)(b) requires that the prosecutor turn over to the defense a "record of judgment of conviction of a witness the people intend to call at trial if the record of conviction is known by the prosecutor to exist."  In this case, Mrs. Nappi testified that she had never been convicted of a misdemeanor or felony and that she only had a violation on her record.  Nappi has failed to show that the prosecutor knew that Mrs. Nappi had a criminal conviction which he had a duty to disclose.  The record further indicates that, after the prosecutor belatedly disclosed a more complete copy of Chrisman's criminal history, Nappi was offered an opportunity to re-examine the witness.  Nappi therefore cannot show that he is entitled to habeas relief on the prosecution's belated § 240.45(1)(b) disclosure because he "was given a meaningful opportunity to use the allegedly exculpatory material to cross-examine the People's witness[]."  *Osborne v. Senkowski*, No. CV98-3065, 1998 WL 846102, at *1 (E.D.N.Y. Oct. 6, 1998)

(quoting *People v. Osborne*, 689 N.E.2d 526, 526 (N.Y. 1997)).  Nappi thus cannot prevail on these prosecutorial misconduct arguments either.

C.      Voir Dire Objections and Summation Statements

Nappi further asserts that the prosecution wrongly stated "that defense counsel's comparing different standards of proof under the law was 'totally inappropriate'" and "impugned the integrity of defense counsel" by stating in summation that defense counsel "was just 'throwing [arguments] out there to hope that someone buys that.'"

To successfully raise a claim cognizable on habeas review based on a prosecutor's comments at trial, a petitioner must demonstrate that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Under this standard, only "egregious" prosecutorial misconduct can give rise to a constitutional claim.  *See Miranda v. Bennett*, 322 F.3d 171, 180 (2d Cir. 2003) (quoting *Donnelly*, 416 U.S. at 647-48).  A prosecutor's comments in summation constitute "grounds for reversal only when the remarks caused 'actual prejudice.'"  *Dunn v. Sears*, 561 F. Supp. 2d 444, 455 (S.D.N.Y. 2008) (citing *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998)).  "In determining whether the prosecutor's comments cause[d] prejudice, [a] court considers three factors: '(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements.'"  *Id*. at 457 (quoting *United States v. Thomas*, 377 F.3d 232, 245 (2d Cir. 2004)).

Nappi's claim falls far short of meeting these standards.  During voir dire, defense counsel stated, "Mr. Nappi as he sits here is not just not guilty, he is completely innocent of this

crime.  Do all of you accept and understand that?"  The prosecutor objected, arguing that

defense counsel was inaccurately reciting the law.  The court overruled the objection but

explained to the jury that Nappi "is presumed innocent."  Nappi cannot show that the

prosecutor's objection warrants habeas relief, particularly given the curative instruction offered

by the trial court.

Moreover, the prosecutor's statement during summation does not rise to the level of

egregious conduct required for habeas relief.  It is improper as a matter of both state and federal

law for a prosecutor to impugn defense counsel's integrity, denigrate or ridicule the defense

theory, or make *ad hominem* attacks on defense counsel.  *See, e.g.*, *United States v. Biasucci*,

786 F.2d 504, 513-14 & n.9 (2d Cir. 1986) (characterizing as "clearly . . . inappropriate" the

prosecutor's "needless and unwarranted *ad hominem* attacks against defense counsel[,] ... [f]or

instance, the prosecutor addressed defense counsel at one point as 'you sleaze,' at another as

'you hypocritical son-,' as being 'so unlearned in the law,' and on several occasions the

prosecutor objected to questions by the defense as 'nonsense'" (internal citations to the record

omitted));  *People v. LaPorte*, 762 N.Y.S.2d 55, 57-58 (N.Y. App. Div. 2003) (reversing

conviction where prosecutor's remarks during summation were not fair response to defense

counsel's summation and thus denied defendant a fair trial because evidence against defendant

was not overwhelming, prosecutor impugned defense counsel's integrity, ridiculed the defense

theory as "mumbo jumbo," and "warned the jurors several times that defense counsel was

manipulating them and trying to prevent them from using their common sense") (citation

omitted).  But as the Second Circuit has noted, "a prosecutor is not precluded from vigorous

advocacy, or the use of colorful adjectives, in summation."  *United States v. Jaswal*, 47 F.3d

539, 544 (2d Cir. 1995) (citation omitted).  In this case, the Appellate Division's decision

denying this claim was neither unreasonable nor contrary to federal law because the prosecutor's

comment on summation was not improper and thus does not amount to a constitutional

infirmity.  Rather, the statement constituted a fair response to defense counsel's summation, in

which he challenged the veracity of the prosecution's witnesses and the strength of its case.  *See*

*Knight v. Walsh*, 524 F. Supp. 2d 255, 287 (W.D.N.Y.2007).  Nappi therefore fails to show that

the prosecution committed misconduct in any respect.


Claim 8: Denial of Right to Counsel

Nappi next alleges that his right to counsel was violated when the prosecution introduced

at trial statements he made to his wife during her jailhouse visits and outside the presence of his

counsel.  The Appellate Division summarily rejected this claim on direct appeal.

In support of this claim, Nappi argues in his Petition:

> Mrs. Nappi agreed to act as a "confidential informant" for law enforcement in this case, beginning from before Mr. Nappi was released from prison (on parole).  Once he was released, Mrs. Nappi was in regular contact with parole about what Mr. Nappi was doing and saying.  After Mr. Nappi was arrested on this case and re-incarcerated (and after he was represented by counsel) Mrs. Nappi made trips to see him in jail and reported back what he said to her to law enforcement.  The prosecution used these statements at trial to help convict Mr. Nappi.

In this case, it does not appear that Nappi requested, or that the court held, a *Massiah*[5] or

*Cordona*[6] hearing in the state proceedings.  Under *Massiah*, the Sixth Amendment right to

_____

[5]        *Massiah v. United States*, 377 U.S. 201 (1964).  A *Massiah* hearing tests the admissibility of statements given by an indicted defendant to the government or its agents.

[6]        *People v. Cardona*, 360 N.E.2d 1306 (N.Y. 1977).  A *Cardona* hearing, functionally equivalent to a *Massiah* hearing, is held in New York State court proceedings to test

counsel is violated when a private individual acting as a government agent deliberately elicits incriminating statements from an accused in the absence of his counsel. *United States v. Miller*, 116 F.3d 641, 665 (2d Cir. 1997). It does not appear, however, that such hearing was required in this case because the record does not indicate that Mrs. Nappi was colluding with the government after she informed Nappi's parole officer about the gun. Although she was listed in the warrant application as a confidential informant, it appears that this confidential designation was made to protect her safety. The record does not suggest that Mrs. Nappi acted as a confidential informant after the disclosure. Nor does the record indicate that she was acting as a government agent when she visited her husband in jail, particularly given that, on two of those occasions, she was accompanied by their son and granddaughter. Because Mrs. Nappi was not acting as a government agent during her jail visits, Nappi's right to counsel did not attach. Thus, the fact that he did not have counsel during those visits does not warrant the granting of habeas relief.

<u>Claim 9: Verdict Against Weight of the Evidence/Based on Insufficient Evidence</u>

Nappi additionally asserts that "[t]he competent (properly admitted) evidence in this case did not support a guilty verdict." Citing New York case law, the Appellate Division summarily rejected Nappi's contention that the verdict was against the weight of the evidence.

As an initial matter, to the extent that Nappi claims in his Petition that his conviction was against the weight of the evidence, such claim is not cognizable on federal habeas review. *McKinnon v. Superintendent*, *Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011).

---

whether a prosecution witness was acting as an agent of the District Attorney when he or she spoke to the defendant in jail.

"Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). "A weight of the evidence argument is a pure state law claim grounded in [CPL] § 470.15(5) which empowers New York State intermediate appellate court[s] to make weight of the evidence determinations." *Id.* (citation and internal quotation marks omitted).

Moreover, with respect to his sufficiency of the evidence claim, Nappi misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted). It is through this lens that this Court must view an insufficiency of the evidence claim.

In this case, Nappi argues that there was insufficient proof of his possession of the gun, focusing primarily on the lack of credibility of the prosecution's witnesses. But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *See Schlup*, 513 U.S. at 330. Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Nappi bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The record does not compel the conclusion that no rational trier of fact could have found proof that

Nappi was guilty of third-degree criminal possession of a weapon, especially considering the double deference owed under *Jackson* and the AEDPA.   Nappi is therefore not entitled to relief on this claim.

Claim 10: Erroneous *Sandoval* Ruling

Nappi likewise contends that his "constitutional right to testify on his own behalf was violated when the Court ruled that, should he testify, he could be impeached with priors as remote as 45 years old."  The Appellate Division denied this claim without comment on direct appeal.

Here, the Appellate Division's decision to implicitly uphold the trial court's *Sandoval* ruling was not contrary to clearly established federal law.  In *Luce v. United States*, the Supreme Court held that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify."  469 U.S. 38, 43 (1984).  When a defendant does not testify, "[a]ny possible harm flowing from a . . . ruling permitting impeachment by a prior conviction is wholly speculative."  *Id.* at 41.  Furthermore, "[b]ecause an accused's decision whether to testify 'seldom turns on the resolution of one factor,' a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify."  *Id.* at 42 (quoting *New Jersey v. Portash*, 440 U.S. 450, 467 (1979) (Blackmun, J., dissenting)).  While *Luce* involved a ruling on a motion *in limine* pursuant to Rule 609(a) of the Federal Rules of Evidence, its holding has been applied to *Sandoval* rulings because they involve similar considerations.  *See Wilson v. Heath*, 938 F. Supp. 2d 278, 287 (N.D.N.Y. 2013) (noting that "*Sandoval* claims are barred from habeas review where . . . the petitioner failed to actually take the stand and testify at trial"); *Ponder v. Conway*, 748 F. Supp. 2d 183, 194 (W.D.N.Y. 2010)

(citing *Luce*, 469 U.S. at 43). "Second Circuit law has created a bright-line rule . . . barring habeas relief for allegedly erroneous *Sandoval* rulings in instances where a defendant elects not [to] testify." *Shannon v. Senkowski*, 00 Civ. 2865, 2000 WL 1683448, at *6-7 (S.D.N.Y. Nov. 9, 2000); *see also Andrews v. LeClaire*, 709 F. Supp. 2d 269, 278 (S.D.N.Y. 2010) (collecting cases).

Nappi did not testify at trial. It would be a matter of pure conjecture for this Court to speculate as to whether the prosecution would in fact have sought to impeach Nappi by inquiring into each bad act, how such testimony would have impacted the trial, and to what extent Nappi's decision not to testify was motivated by the trial court's *Sandoval* ruling. *See Luce*, 469 U.S. at 42. Thus, Nappi is not entitled to relief on his *Sandoval* claim.

Claim 12: Ineffective Assistance of Trial Counsel

Finally, Nappi contends that he was deprived of effective assistance of counsel when trial counsel "failed to bring to the jury's attention critical discrepancies in the complaining witness's testimony and when he failed to object to some improper and prejudicial testimony." The Appellate Division summarily rejected this claim on direct appeal.

In support of his contention, Nappi states in his Petition:

Defense counsel was not provided with Mrs. Nappi's *ex parte* testimony until after the first jury trial started and after she testified. (Only after she testified was defense counsel notified that she had been the "confidential informant" and only at that time was her earlier testimony, along with hundreds of other pages of material, disclosed.) While defense counsel's ability to represent his client was thus hampered by the prosecution and trial court, defense counsel failed to bring to the jury's attention the critical differences in what Mrs. Nappi testified to prior to trial and what she said at trial. (Most importantly, the jury never learned that Mrs. Nappi allegedly told Parole about the gun when it first was brought to Herkimer County back in December 2008, and that

Parole allowed the gun to sit there for over three weeks. Such earlier testimony totally undermined the prosecution's theory at trial that Mrs. Nappi had no ulterior motive to get rid of Mr. Nappi, that she was loyal to Mr. Nappi and only mentioned the gun on January 5, 2009 to Parole because she became terrified of him. The earlier testimony also undermined Parole's claim at trial that Mr. Nappi was a highly dangerous individual and that they had to rush to the residence on January 5 to get a gun that they had allegedly just discovered was there.)

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Nappi must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an

objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 124 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that defendant did not receive a fair trial.'" *Id.* at 124 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard.

Nappi's claim must fail, however, even under the more lenient New York standard. As an initial matter, Nappi complains that he was not provided a copy of the *ex parte* hearing transcript until after Mrs. Nappi testified in the first trial but Nappi's counsel had the transcript and was free to use Mrs. Nappi's hearing testimony for impeachment purposes in the second trial. It is not clear whether counsel's decision not to do so was inadvertent or trial strategy. Courts accord "significant deference" to "a trial counsel's decision how to conduct cross examination" and "refus[e] to use perfect hindsight to criticize unsuccessful trial strategies." *Eze v. Senkowski*, 321 F.3d 110, 132 (2d Cir. 2003); *see also Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) ("Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim.") (internal quotation marks and omission omitted). In this case, Nappi's counsel vigorously cross-examined Mrs. Nappi, attempting to discredit her testimony that she feared Nappi and suggest that she had a motive to put Nappi back in jail. Plainly, trial counsel's trial strategy was not so deficient as to fall below the bar of the Sixth Amendment, and the state court did not unreasonably apply Supreme Court precedent in so concluding. *See, e.g.*, *Venable v. Walsh*, No. 05-CV-84, 2009 WL 750230, at *10 (E.D.N.Y. Mar. 19, 2009) (noting that defense "counsel conducted an extensive cross-examination of each of the witnesses" and "find[ing] nothing deficient about defense counsel's cross-examinations" that would support a claim of ineffective assistance of counsel).

Moreover, Nappi cannot demonstrate that he was prejudiced by his counsel's failure to highlight inconsistencies in Mrs. Nappi's testimony. Whether Mrs. Nappi informed Nappi's parole officer about the gun in December or January, she nonetheless consistently testified that

Nappi obtained the gun in December and forced her to bring it to their home.  Nappi thus cannot demonstrate that the outcome of the trial would have been different had Mrs. Nappi been impeached with her prior testimony, and Nappi cannot show that he was prejudiced by the omission.  Accordingly, Nappi is not entitled to relief on his ineffective assistance of counsel claim.

V. CONCLUSION

Nappi is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court grants a Certificate of Appealability solely to his claim that his right to confrontation was violated by the trial court's order precluding him from cross-examining his wife about her alleged relationship with Del Dyman. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); 2d Cir. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated:  May 30, 2014.

    /s/ James K. Singleton, Jr.    <br/>
JAMES K. SINGLETON, JR.<br/>
Senior United States District Judge